UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 08-1207-CAS | | Date | July 23, 2009 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| CATHERINE JEANG | Not Present | Kerry O'Neil, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defts: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| TRANETTE REGINA EVANS | Not | | X | HILARY POTASHNER, DFPD | Not | | X |

Proceedings:   **(IN CHAMBERS): DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** (filed 5/21/09)

## I.     INTRODUCTION

On October 10, 2008, defendant Tranette Regina Evans was charged in an eight-count indictment with: (1) possession of stolen mail in violation of 18 U.S.C. § 1708 (Counts 1-3); (2) possession of fifteen or more unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) (Counts 3-6); (3) use of an unauthorized access device in violation of 18 U.S.C. § 1029(a)(2) (Count 7); and (4) aggravated identity theft in violation of 18 U.S.C. § 1028 (a)(1).

On May 21, 2009, defendant filed the instant motion to suppress evidence obtained by the government as a result of a stop, detention and search conducted by the San Fernando Police Department ("SFPD") on August 12, 2008. On June 8, 2009, the government filed its opposition. On June 16, 2009, defendant filed her reply. On June 19, 2009, the government filed a surreply. On June 22, 2009, the Court held a hearing. On June 29, 2009, defendant filed a supplemental brief. On July 6, 2009, the government filed a supplemental brief. After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

On August 12, 2008, SFPD Officers Edgar Fernandez and Emilio Escobedo instructed

defendant to pull over for a traffic enforcement stop after they witnessed defendant's vehicle exceeding the posted speed limit. Fernandez Decl. ¶ 3. After defendant pulled into a metered parking space, Officer Escobedo obtained identification from defendant and her passenger, Mason Williams. Escobedo Decl. ¶ 6. Officer Escobedo conducted a license status check and want/warrant inquiry, and learned that defendant had a valid driver's license and was driving a rental car. Id. at ¶ 7. However, Officer Escobedo determined that Williams had one outstanding warrant as well as a designation as an Endangered Missing Adult. Id. at ¶ 7-8. Williams was then placed under arrest and seated in the patrol vehicle. Id. at ¶ 9.

As Officer Fernandez approached the vehicle to contact defendant, "he observed [defendant] make a furtive movement with her right hand from underneath her right thigh and move her hand to the side of the driver's seat. At that point, Officer Fernandez thought she may have put a weapon or contraband underneath the seat." Fernandez Decl. at ¶ 11-12. When defendant stepped out of the vehicle, Officer Fernandez questioned her about what she put under her seat and she finally admitted, "Ok. It's a pipe. But it's not under the seat. I put it on the side of the seat. It was underneath my thigh." Id. at ¶ 13. Officer Fernandez directed her to wait with Officer Escobedo at the curb, where she sat without handcuffs, approximately 8-10 feet from the vehicle. Id. at ¶ 14.

After locating the pipe, Officer Fernandez continued searching the passenger compartment of the vehicle, and observed two purses on the floor of the driver's side, which Officer Fernandez claims were within defendant's immediate control. Id. at ¶ 17. In the two purses, Officer Fernandez discovered what he believed to be a bag of crack cocaine, a prescription bottle of Diazepam bearing someone else's name on the label, sundry drug paraphernalia, and several check books and credit, debit and gas cards with names other than those of defendant or Williams. Id. at ¶ 17-19. Within twenty minutes of the initial traffic stop, the officers placed defendant and Williams under arrest for violations of the California Health and Safety Code. Id. at ¶ 21; Escobedo Supp. Decl. at ¶ 5.

Pursuant to the SFPD's impound policy, defendant's vehicle was impounded after defendant and Williams were placed under arrest. Fernandez Decl. at ¶ 22. Pursuant to the SFPD's oral inventory search policy, defendant's vehicle was inventoried, and as a result of the inventory search, Officer Fernandez discovered bags of mail he believed to be stolen.[1] Id.

---

[1] According to Officer Fernandez, "the SFPD has an oral inventory policy for the protection of the owner's property when a vehicle is removed pursuant to Cal. Veh. Code § 22651(h)(1). That policy provides that officers should inventory the items in a vehicle before it
(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Officer Fernandez later contacted the United States Postal Inspectors Office to alert them as to potential mail fraud. Id. at ¶ 27. On August 19, 2008, the SFPD executed a search warrant and collected evidence from defendant's residence located at 11311 Bedsoe Street, Sylmar, California. Mot. at 3.

### III.   DISCUSSION

Defendant argues that Officers Fernandez and Escobedo violated her Fourth Amendment rights when they unlawfully stopped her vehicle and conducted an illegal search and seizure. Mot. at 4-5. Defendant further argues that "evidence seized in violation of the Fourth Amendment, including subsequently discovered 'fruits' thereof, may not be used in a criminal proceeding against the victim of an illegal search and seizure." Mot. at 5 (citing Wong Sun v. United States, 371 U.S. 471, 487 (1963)). Defendant seeks to suppress "all the evidence obtained from the automobile, the statements made by [defendant] and Williams at the scene of the arrest and later to the Postal Inspectors, the evidence located in the home on Bledsoe Street, and the statements of any witnesses identified and/or interviewed as a result of this unlawful stop and unlawful search," on the grounds that all such evidence is "fruit of the poisonous tree." Id.

The government argues that the Court should deny the motion because Officers

---

(...continued)
is towed or impounded. The policy encourages a thorough inventory, including searches of closed containers. After such an inventory, the policy provides that the officer should fill out the California Highway Patrol 180 Vehicle Report Form ("CHP 180 Form"), which details, among other things, the physical condition of the vehicle, where items in the vehicle were found, and what items were found." Fernandez Supp. Decl. ¶ 12. At the motion hearing, Officer Fernandez testified that the oral inventory policy dictates that items must be inventoried before the vehicle is towed. Transcript of June 22, 2009 Hearing ("6/22/09 Hearing") at 17:23-25 ("Q: And the oral policy says that inventory items must be inventoried before it's towed; is that correct? A: Yes"). Officer Fernandez also testified that pursuant to the oral inventory policy, officers are typically afforded discretion in searching the vehicle for valuables left behind, but officers cannot open a locked container without consent. Id. at 18:3-25 ("Q: And under the policy, what parts of the car are to be searched? A: The interior of the car and you generally check the trunk area for valuable as well as a spare tire"). Finally, Officer Fernandez testified that the purpose of the CHP 180 Form is typically to catalogue items left in the impounded vehicle, rather than to list evidence obtained. Id. at 29:8-10 ("Q: And is the purpose of [CHP 180 Form] to list items that officers have taken into evidence? A: No, it is not").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Fernandez and Escobedo lawfully obtained the evidence forming the basis of the charges in the indictment. Opp'n at 2. The government argues that the officers lawfully stopped defendant's vehicle for a traffic violation after they observed her speeding, and that, having found narcotics paraphernalia in the vehicle, conducted a lawful inventory search prior to towing the car to an impound facility. Id.

### A. Propriety of the Traffic Enforcement Stop

Defendant argues that unless the government can establish the officers' reasonable suspicion for stopping defendant's car on August 12, 2008, the Court should find the seizure an unreasonable violation of defendant's constitutional rights. Mot. at 4.

The government argues that Officers Fernandez and Escobedo had "more than a sufficient basis . . . to stop defendant for a traffic violation" as they "personally observed defendant violate the speed law." Opp'n at 8.

An officer may reasonably make a traffic stop when the officer has "probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). Probable cause for a traffic stop exists when police officers are aware of facts and circumstances warranting a reasonable belief that the suspect had committed or was committing a crime. United States v. Wallace, 213 F.3d 1216, 1219 (9th Cir. 2000) (reasoning that officer had probable cause to stop defendant's vehicle for illegal window tinting where officer "[formed] an opinion in a common sense examination of a vehicle"). Probable cause is a "fluid" concept, depending on an "assessment of probabilities in particular factual contexts." Illinois v. Gates, 462 U.S. 213, 232 (1983). "The fact that the alleged traffic violation is a pretext for the stop is irrelevant, so long as the objective circumstances justify the stop." Wallace, 213 F.3d at 1220.

California Vehicle Code § 22350 mandates that "no person shall drive a vehicle . . . at a speed greater than is reasonable or prudent . . . and in no event at a speed which endangers the safety of persons or property." As indicated in their respective declarations, Officers Fernandez and Escobedo first observed defendant's vehicle traveling at what they estimated to be 15 to 20 miles over the posted speed limit. As they paced defendant's vehicle for approximately 100 yards, the officers continued to watch defendant exceed the posted speed limit by 10 miles per hour. Therefore, the Court concludes that Officers Fernandez and Escobedo reasonably believed that a traffic violation had occurred and had probable cause to stop defendant's vehicle. Whren, 517 U.S. at 810.

**CRIMINAL MINUTES - GENERAL**

B.   **Propriety of Defendant's Detention**

1.   **Investigation of Passenger Williams**

Defendant argues that Officers Fernandez and Escobedo should have cited or released her upon confirming her valid driver's license, and their subsequent investigation of Williams unlawfully prolonged defendant's detention in violation of her Fourth Amendment rights. Reply at 3-4. Defendant further argues that, "absent some 'particularized reason' to investigate the passenger subsequent to a lawful stop, an officer's demand for the passenger's identifying information violates the Fourth Amendment." Id. (citing United States v. Henderson, 463 F.3d 27, 45 (1st Cir. 2006)).

The government argues that Officers Fernandez and Escobedo lawfully requested identification from Williams, and detained defendant for only a reasonable length of time while they investigated her passenger. Opp'n at 8-9 (citing United States v. Diaz-Castaneda, 494 F.3d 1146, 1152 (9th Cir. 2006)).

Pursuant to a legitimate traffic stop, a police officer may ask for identification without conducting a Fourth Amendment search and seizure. See Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt County, 542 U.S. 177, 185 (2004) ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment"); see also INS v. Delgado, 466 U.S. 210, 216 (1984) ("[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure"). Moreover, the Ninth Circuit held that the duration of a traffic stop is examined by a "fact-specific reasonableness inquiry" and that "a driver does not 'have the right to be released the instant the steps to check a license, registration, and outstanding warrants . . . ha[ve] been completed.'" United States v. Turvin, 527 F.3d 1097, 1102 (9th Cir. 2008) (citing United States v. Childs, 277 F.3d 947, 953-954 (7th Cir. 2002)).

The Court concludes that the officers validly requested identification from passenger Williams. United States v. Diaz-Castaneda, 494 F.3d at 1152 ("The police may ask people who have legitimately been stopped for identification without conducting a Fourth Amendment search or seizure"); see Hiibel, 542 U.S. at 185 ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment."); Delgado, 466 U.S. at 216 ("[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure.")). Moreover, defendant's detention was not unreasonably prolonged when the officers ran a wants/warrants check on Williams, as the process took mere minutes and defendant was not legally entitled to be cited or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

released as soon as the officers learned her license was valid. United States v. Turvin, 527 F.3d at 1102. The Court therefore concludes that the officers' investigation of passenger Williams did not unlawfully prolong defendant's detention in violation of her Fourth Amendment rights.

### 2. Defendant's Detention After Williams's Arrest

Defendant argues that her detention was further unlawfully prolonged when Officer Fernandez ordered her out of the car and began investigating matters unrelated to the speeding infraction. Mot. at 6; Reply at 5. Defendant argues that her allegedly "furtive movements" do not justify the officer's expanded investigation into matters unrelated to the traffic stop, as they did not give Officer Fernandez the "separate reasonable suspicion" necessary to expand the scope of the traffic stop. Reply at 6 (citing United States v. Mendez, 476 F.3d 1077, 1981 (9th Cir. 2007)).

The government responds first that Officer Fernandez did not unlawfully prolong defendant's detention by ordering her out of the vehicle, as he was authorized to do so pursuant to the valid traffic stop. Opp'n at 8-9 (citing Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1327 -1328 (9th Cir. 1995)). Second, the government argues that as a result of her own furtive movements and admission, the scope of defendant's detention was permissibly broadened beyond the initial traffic violation. Opp'n at 11-12 (citing United States v. Garcia-Rivera, 353 F.3d 788, 791 (9th Cir. 2003) ("an officer may . . . broaden the line of questioning if there are additional particularized and objective factors arousing suspicion")).

Pursuant to a legitimate traffic stop, police officers may order all occupants to exit the vehicle. Pennsylvania v. Mimms, 434 U.S. 106, 109-11 (1977) ("What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety"); see also Ruvalcaba, 64 F.3d at 1327-1328 ("We hold that once a police officer has lawfully stopped a vehicle for a traffic violation, the officer may, consistent with the Fourth Amendment and despite the absence of probable cause or reasonable suspicion of criminal activity, order all occupants of the vehicle to step outside.").

Once an officer has detained a vehicle and its occupants pursuant to a valid traffic stop, "[he] must initially restrict the questions he asks . . . to those that are reasonably related to the justification for the stop." United States v. Chavez-Valenzuela, 268 F.3d 719, 724 (9th Cir. 2001). However, officers may expand the scope of the investigation if their questioning does not unreasonably prolong the traffic stop, or if officers have separate reasonable suspicion to investigate matters unrelated to the initial purpose of the stop. Mendez, 476 F.3d at 1080. Separate reasonable suspicion arises where an officer perceives "additional particularized and

objective factors" causing the officer to distrust the detainee or the situation. Garcia-Rivera, 353 F.3d at 791.

The Court concludes that Officer Fernandez was authorized to order defendant out of her vehicle, as she was already detained pursuant to a legitimate traffic stop. Pennsylvania v. Mimms, 434 U.S. 106, 109-11 (1977) ("The weighty interest in officer safety is not dependent on the danger from the driver as a result of being stopped for a traffic violation, it is dependent on the inherent danger from approaching seated people in a vehicle"). Moreover, defendant's furtive movements and admission gave Officers Fernandez a reason to investigate matters unrelated to the traffic stop. Mendez, 476 F.3d at 1080; Garcia-Rivera, 353 F.3d at 791 (affirming district court's denial of defendant's motion to suppress where defendant's own "furtive movement" was a factor in giving officers separate reasonable suspicion to expand the scope of the initial traffic stop). Therefore, the Court concludes that Officers Fernandez and Escobedo did not unlawfully prolong defendant's detention in violation of her Fourth Amendment Rights.

### C.    Probable Cause to Search Defendant's Vehicle

Defendant argues that Officer Fernandez lacked probable cause to search her vehicle and thus violated her Fourth Amendment rights. Mot at 4; Reply at 7. Defendant further argues that Officer Fernandez cannot justify his search as incident to Williams' arrest under the recent Supreme Court decision Arizona v. Gant, which narrowed the ability of police officers to search vehicles. Mot. at 4-5 (citing Arizona v. Gant, 2009 WL 1045962 at *7 (April 21, 2009) (holding that police may search a vehicle incident to a recent occupant's arrest only when "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of search" or when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle")).

The government responds that the automobile exception to the warrant requirement justifies Officer Fernandez's search of the vehicle because he had probable cause to search the vehicle and its containers as he reasonably believed that defendant possessed narcotics paraphernalia. Opp'n at 14. Moreover, the government notes that the Arizona v. Gant decision did not come down until April 21, 2009, and the arrest occurred on August 12, 2008, when, according to the government, "it was widely regarded as standard law enforcement practice throughout the nation that it was permissible for officers to search the passenger compartment of a vehicle incident to the arrest of a recent occupant." Id. at 13. Finally, the government argues that the officers adhered to SFPD policy and legally searched defendant's vehicle before

having it towed to an impound facility.  Id. at 16.

In her reply, defendant argues that the government cannot justify the search based on her alleged "furtive movements" because the time to investigate the initial traffic violation expired before Officer Fernandez noticed any such movements.  Reply at 6.

Warrantless searches are presumptively unconstitutional, unless they fall within the bounds of some exception to the warrant requirement.  One such exception is known as the "automobile exception," pursuant to which police officers may "conduct a warrantless search of a vehicle if they have probable cause to believe that it contains contraband."  United States v. Pinela-Hernandez, 262 F.3d 974, 977-78 (9th Cir. 2001) ("This rule is known as the 'automobile exception' to the general rule that the police must obtain a warrant before executing a search."); see also California v. Acevedo, 500 U.S. 565 (1991) (holding that under the automobile exception  to the warrant requirement, police officers may search an automobile and all containers found inside without a warrant if they have probable cause to believe that the automobile contains evidence of a crime).[2]  There is a "two-fold" rationale for this exception: "the expectation of privacy in one's vehicle is less than in one's home, and the mobility of vehicles necessitates faster action on the part of law enforcement officials."  Id. at 978.

Probable cause exists when police officers possess "'reasonable trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense.'"  United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir. 1990) (quoting United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1296 (9th Cir. 1988)).  Whether probable causes exists is based on the "totality of the circumstances" known to the arresting officers.  United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986).  Moreover, "law enforcement officers may draw upon their experience and expertise in determining the existence of probable cause."  United States v. Garza, 980 F.2d 546, 550 (9th Cir. 1992).  While "[c]onclusive evidence of guilt is not necessary to establish probable cause . . . [m]ere suspicion, common rumor, or even strong reason to suspect are not enough."  McKenzie v.

---

[2] The automobile exception also applies to containers within a vehicle.  United States v. Ross, 456 U.S. 798, 824 (1982) ("The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted.  Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found."); Wyoming v. Houghton, 526 U.S. 295, 301 (1999) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.") (quoting United States v. Ross, 456 U.S. 798, 825 (1982)).

Lamb, 738 F.2d 1005, 1007 (9th Cir. 1984).

The Court concludes that Officer Fernandez's search falls within the "automobile exception" because he had probable cause to search defendant's vehicle. United States v. Pinela-Hernandez, 262 F.3d 974 (9th Cir. 2001). Not only did he witness defendant make "furtive movements," defendant also admitted that she hid a pipe. Because defendant's own actions permissibly broadened the scope of the detention, her claim that the applicable time period had expired is without merit. Furthermore, once Officer Fernandez found the pipe and arrested defendant for violations of the California Health and Safety Code, he had reason to believe that evidence related to the crime of arrest was in the car. California v. Acevedo, 500 U.S. 565 (1991).[3]

### D.     Impound and Inventory Search

#### 1.     Impound of Defendant's Vehicle

Defendant argues that Officer Fernandez violated her Fourth Amendment rights when he continued to search her car pursuant to an impound and inventory search. Def.'s Br. at 1. According to defendant, the SFPD's impound policy is constitutionally deficient (1) because it is not standardized and thus "gives officers unfettered discretion to decide whether to impound a car," and (2) because the SFPD's policy "is not closely tailored to the department's community caretaking role." Id. at 2.

---

[3] Although the Gant decision did not come down until April 21, 2009, it appears to the Court that the search is still justified under Gant because Officer Fernandez had reason to believe that evidence related to the crime of arrest was in the passenger compartment of the car. Arizona v. Gant, 2009 WL 1045962 at *2 ("circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

The government responds that defendant's rental car was lawfully impounded pursuant to Section 22651(h)(1) of the California Vehicle Code, which provides that an officer may impound a car upon arrest of the driver, and the SFPD's impound policy, which states in pertinent part:

In the course of their duties, Department employees often need to either store, impound vehicles, or take steps to ensure that the vehicle's immediate possession will be cared for. It is the policy of this Department to take possible steps to ensure that a vehicle in the immediate physical possession of an arrestee will be cared for. Depending on the circumstances, the vehicle may:

- be released to another licensed driver with the consent of the owner or arrestee;
- be secured and legally parked and left at the scene;
- or towed to an authorized contract garage.

It shall be the policy of this Department not to leave a vehicle parked that is incapable of being secured except upon the rational knowing request of the owner or driver.

The government contends that defendant never requested that the officers give the rental car to a third party and never established that "anyone else was even contractually allowed by the rental agency to drive the car." Govt.'s Br. at 3. The government further argues that the officers were justified in impounding defendant's vehicle because it was in a metered parking space when she was arrested, and the officers were under no obligation to insert money into her meter or otherwise arrange for lawful parking. Id. at 3.

Section 22651(h)(1) of the California Vehicle Code states in relevant part: "[a] peace officer . . . may remove a vehicle . . . [w]hen an officer arrests a person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody." Cal. Vehicle Code § 22651(h)(1). However, "[w]hile Section 22651 authorizes an officer to remove a vehicle in the control of a person arrested, an impoundment pursuant to the authority of a 'state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment . . . [t]he question is rather whether the search was reasonable under the Fourth Amendment.'" Ramirez v. City of Buena Park, 560 F.3d 1012, 1024-25 (9th Cir. 2009) (quoting Miranda v. City of Cornelius, 429 F.3d 858, 864-865 (9th Cir. 2005)). Under the community caretaking doctrine, whether an impoundment is warranted depends on the location of the vehicle, as well as the police officer's duty to prevent it from endangering other drivers, affecting the flow of traffic,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

or being a target for vandalism and theft. Miranda, 429 F.3d at 864.

Furthermore, a police officer's discretion in choosing whether or not to impound a vehicle does not render the impoundment unconstitutional. Colorado v. Bertine, 367-368 ("[t]here is no merit to the contention that the search of [defendant's vehicle] was unconstitutional because departmental regulations gave the police discretion to choose between impounding the [vehicle] and parking and locking it in a public parking place"). The Bertine court held that "the exercise of police discretion is not prohibited so long as that discretion is exercised . . . according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Bertine, 479 U.S. at 367-368.

The Court concludes that defendant's car was legally impounded. The SFPD policy is not unconstitutional merely because it provides police officers with discretion to choose between impounding the vehicle, parking it legally and safely, and releasing it to a licensed driver with the owner's permission. See Bertine, 479 U.S. at 367-368. Furthermore, Officer Fernandez legally exercised his discretion and acted within the scope of the community caretaking doctrine. Defendant's vehicle was a rental and Officers Fernandez and Escobedo were rightly concerned about releasing the vehicle to someone who may not have been authorized to drive it. Moreover, Officers Fernandez and Escobedo were under no obligation to move defendant's car to a public lot or leave it illegally parked at an expired meter, where it could have been a target for vandalism or theft. Miranda, 429 F.3d at 866 n. 6 ("An officer, acting within the scope of his or her community care-taking function, is not required to consider "the existence of alternative less intrusive means. . .").

### 2. Inventory Search of Defendant's Vehicle

Defendant argues that the inventory search conducted by Officers Fernandez and Escobedo was also unlawful because the SFPD's oral inventory policy is not standardized and gives unbridled discretion to officers. Pl.'s Br. at 3-4 (citing Florida v. Wells, 495 U.S. 1, 3-4 (1990)). Defendant further argues that the SFPD's oral policy is unlawful because "absent a policy with respect to the opening of containers, the search 'is not sufficiently regulated to satisfy the Fourth Amendment.'" Id. at 4. Defendant contends that Officer Fernandez testified that it was within his discretion (1) to open containers; (2) to decide which parts of the car to inventory; and (3) to ask for consent to the search. Id. Defendant further contends that Officer Fernandez testified that he continued to search defendant's car after he found the pipe

to find "something else she tried to hide."[4] Id. at 5.  Defendant further argues that the inventory form that was completed only stated that a purse was found in the car that contained CDs.  Id.

The government responds that the SFPD oral inventory policy does not give officers unfettered discretion.  Govt's Br. at 5.  The government contends that the officers' declarations and hearing testimony demonstrate that SFPD has an oral inventory policy that (1) encourages thorough searches; (2) allows them to open closed containers; (3) forbids the opening of locked containers; (4) results in an inventory that lists only non-evidentiary items; and (5) details the condition of the car when impounded.  Id.  The government further argues that inventory policies that "regulate the opening of containers" have been held to offer sufficient guidance to the officers to prevent standardless searches in violation of the Fourth Amendment.  Id. (citing Wells, 495 U.S. at 4).

Pursuant to a lawful impound, police officers may conduct an inventory search of the vehicle's contents.  United States v. Wanless, 882 F.2d 1459, 1463 (9th Cir. 1989) ("once a vehicle has been impounded, the police may conduct an inventory search"); see also South Dakota v. Opperman, 428 U.S. 364, 369 (1976) (holding that inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger).  The Fourth Amendment requires that the inventory of an impounded vehicle must be done pursuant to reasonable, standardized police procedures.  Illinois v. Lafayette, 462 U.S. 640, 648 (1983); Wells, 495 U.S. at 4 ("The policy or practice governing inventory searches should be designed to produce an inventory.").  Police officers must not be afforded so much latitude in conducting inventory searches that searches are turned into deliberate method of discovering evidence of a crime.  Id.  Nevertheless, the exercise of police discretion is not prohibited "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Id. at 3-4.  "A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself." Id. at 4.

The Court concludes that the inventory search conducted by Officers Fernandez and Escobedo was lawful because the SFPD's oral inventory policy does not violate the Fourth Amendment.  "[W]hile policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening

---

[4] This testimony related to the search incident to arrest, rather than the inventory search that was conducted later

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors." Wells, 495 U.S. at 4. Officer Fernandez clearly testified that the SFPD's oral inventory policy provided him with discretion to open containers unless they were locked, in which case consent was required. Officer Fernandez also testified that (1) the SFPD's oral inventory policy provided him discretion as to where to search and (2) purpose of the search was to secure valuables. Such a policy does not violate the Fourth Amendment. Id. ("The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment.").

### E. Subsequent Statements and Evidence Seized Pursuant to a Search Warrant

Defendant argues that her own statements, witness statements, and the evidence obtained from the warranted search of her home on August 19, 2008, must be suppressed because they stem from an illegal search and seizure. Mot. at 5.

The Fourth Amendment provides that any evidence that is the product of an illegal search or seizure must be suppressed. United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1063 (9th Cir. 1994). However, as discussed supra, defendant has failed to prove that the Officers' April 12, 2008 conduct constitutes an illegal search and seizure that would taint subsequent statements and evidence. Defendant has offered no alternative basis for suppressing subsequently obtained evidence. The Court therefore concludes that the statements and evidence collected from defendant's home should not be suppressed.

### IV. CONCLUSION

In accordance with the forgoing, the Court hereby DENIES defendant's motion to suppress.

IT IS SO ORDERED.

00 : 00

Initials of Deputy Clerk     CMJ